IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESBROOK P.C., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> WESCO INSURANCE COMPANY, <br><br> Defendant/Counter-Plaintiff. | Case No. 23 C 3675 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Esbrook P.C. brought this action against Defendant/Counter-Plaintiff Wesco Insurance Company challenging Wesco's denial of coverage under a legal professional liability insurance policy. Wesco filed a counterclaim seeking a declaration that it has no obligation to indemnify or duty to defend Esbrook. Currently before the Court are cross-motions by Esbrook for partial summary judgment on its breach of contract and declaratory judgment claims (Dkt. 55) and Wesco for summary judgment on its counterclaim (Dkt. 51). For the reasons discussed below, Esbrook's motion for partial summary judgment is granted, and Wesco's motion for summary judgment is denied, as follows.[1]

---

[1] Wesco initially filed a motion for judgment on the pleadings (Dkt. 51), which was converted to a motion for summary judgment under Fed. R. Civ. P. 56 on February 14, 2024. (Minute Order, Dkt. 60).

**BACKGROUND**[2]

**I.     The Policy**

During all times relevant to this lawsuit, Esbrook maintained a "Lawyers Professional Liability Policy" (the "Policy")[3] issued by Wesco. (PRSOF ¶ 31; DRSOF ¶¶ 6, 20). Section I of the Policy provides:

> The **Company** [(Wesco)] will pay on behalf of the **Insured** [(Esbrook)] sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** . . . arising out of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable . . . .

(Policy at 415)[4] (emphasis in original). The Policy also explains that Wesco's duty to defend is triggered when a claim "seek[s] damages which are payable under the terms of th[e] Policy even if any of the allegations of the claim are groundless, false or fraudulent." (*Id.*). In addition, the Policy goes on to define a "claim" as:

> [A] written or verbal demand received by the **Insured** for money or services arising out of an act or omission . . . in rendering or failing to render **legal services**. A demand shall include the service of suit . . . against the **Insured**.

(*Id.* at 416) (emphasis in original). Read together, the Policy essentially requires Wesco to defend Esbrook if an underlying claim seeks damages arising out of Esbrook's acts or omissions in

---

[2] The facts are taken from the parties' responses to their opposing party's Local Rule 56.1 Statements and are undisputed, unless otherwise noted. (*See* PRSOF, Dkts. 69-1, 70-1; DRSOF, Dkts. 71-1, 72-1).

[3] The Policy is attached to Wesco's Answer as Exhibit A. (*See* Answer, Ex. A, Dkt. 16-1). All further citations to the Policy will refer to Exhibit A.

[4] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header, not other page numbers in the header or footer of the document.

rendering or failing to render "legal services" and to pay certain "damages" on Esbrook's behalf. The Policy defines each of these key terms—"damages" and "legal services"—and includes certain exclusions which are addressed *infra* at 8-14.

## II.     Underlying Lawsuits

Esbrook attempted to utilize the Policy when its former clients, Dr. Wayne Kenneth Auge, and Covalent Global Trust (together, the "Former Clients"), took issue with Esbrook's conduct in connection with representing them in *Auge v. Stryker Corp.*, No. 14-cv-1089, in the United States District Court for the District of New Mexico (the "Stryker Litigation"). (PRSOF ¶ 2; DRSOF ¶ 8). Specifically, the Former Clients questioned Esbrook's handling of the settlement of the Stryker Litigation, which involved the conveyance of property rights related to two different categories of intellectual property. (Dkt. 62-1 at 1410; Dkt. 62-2 at 1452-1453). This dispute between Esbrook and the Former Clients resulted in two different lawsuits between them.

First, the Former Clients sued Esbrook in Colorado asserting claims for breach of contract, unjust enrichment, and professional negligence (the "Colorado Lawsuit"). (PRSOF ¶ 2; DRSOF ¶ 10). Specifically, the Former Clients alleged that Esbrook "breached its duty of care" by "failing to convey [the Former Clients'] desires during settlement negotiations," "failing to follow [the Former Client's] instructions, failing to properly advise[, and] failing to ensure [the Former Clients' understood the Settlement Agreements they were signing," among other things. (DRSOF ¶ 11). The Former Clients sought monetary damages, as well as interest, costs, and attorney fees. (*Id.*). The Colorado Lawsuit was eventually dismissed. (PRSOF ¶ 3).

Second, Esbrook sued the Former Clients in the District of New Mexico for breach of contract, seeking to enforce the legal engagement agreement between them (the "New Mexico Lawsuit"). (PRSOF ¶ 3; DRSOF ¶ 13). The Former Clients responded by filing a 22-count

counterclaim against Esbrook and its attorneys. (PRSOF ¶ 3; DRSOF ¶ 13). Similar to the Colorado Lawsuit, the Former Clients asserted that Esbrook and its attorneys violated their duties of loyalty and care to the Former Clients by failing to ensure they understood the settlement agreements they were signing, violated their fiduciary duties by failing to file a notice of withdrawal in the Stryker Litigation, and otherwise engaged in "professional negligence" and "common law fraud[.]". (PRSOF ¶¶ 4-6; DRSOF ¶ 14). They also requested damages, including monetary damages, attorneys' fees, pre- and post-judgment interest, restitution for unjust enrichment, and release of their settlement proceeds held in a trust account by Esbrook. (PRSOF ¶¶ 4-6; DRSOF ¶ 15).

Esbrook timely tendered both the Colorado Lawsuit and the New Mexico Lawsuit (together, the "Underlying Claims") to Wesco for defense. (DRSOF ¶ 16). Wesco, however, denied both claims for a similar reason: the Underlying Claims against Esbrook did not seek "damages" as defined by the Policy. (PRSOF ¶¶ 38-41; DRSOF ¶¶ 17-18). To date, Wesco has not defended Esbrook in the Underlying Claims, nor paid any defense costs incurred by Esbrook for the claims asserted by the Former Clients. (DRSOF ¶ 19). This disagreement over whether the Underlying Claims were covered by the Policy is the crux of the dispute in this case.

III.     **Procedural History**

In June 2023, Esbrook filed this lawsuit against Wesco for breach of contract (count I), declaratory judgment (count II), and bad faith denial of coverage (count III). (Compl. ¶¶ 38-54, Dkt. 1). Wesco responded by filing an answer, affirmative defenses, and counterclaim. (Answer, Dkt. 16). Wesco's counterclaim includes two requests for a declaratory judgment that it has no duty to defend or to indemnify Esbrook for the Underlying Claims. (*Id.* at ¶¶ 44-61).

4

In September 2023, Wesco filed a motion to bifurcate Esbrook's bad faith claim and stay discovery on that count until the Court ruled on the legal question of whether the Policy covered the Underlying Claims. (Mot. to Bifurcate, Dkt. 30). On November 14, 2023, the Court granted Wesco's motion in part and allowed the parties to engage in limited written discovery in preparation for summary judgment motions on the denial of coverage—*i.e.*, counts I and II of Esbrook's complaint and counts I and II of Wesco's counterclaim. (Minute Order, Dkt. 39).

Wesco then filed a motion for judgment on the pleadings (Def.'s Mot., Dkt. 51), which the Court later converted to a motion for summary judgment under Fed. R. Civ. P. 56. (Minute Order, Dkt. 60). Esbrook responded with its own cross-motion for partial summary judgment. (Pl.'s Mot., Dkt. 55). Those motions are now ripe for review.

## **LEGAL STANDARD**

Summary judgment is proper when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1008 (7th Cir. 2021). Summary judgment "requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Esbrook's claims and Wesco's counterclaim arise under state law, and the parties agree that Illinois law applies. In Illinois, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance

5

policies." *Windridge of Naperville Condominium Ass'n v. Philadelphia Indemnity Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019). The court's function is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Thounsavath v. State Farm Mutual Automobile Ins. Co.*, 2018 IL 122558, ¶ 17. If the policy is unambiguous, its terms must be applied as written. *Id.* Ambiguity exists if the language of the policy is subject to more than one reasonable interpretation, as applied to the dispute before the court. *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). But disagreement between the parties as to meaning does not itself make the policy ambiguous, and courts "will not strain to find an ambiguity where none exists." *Id.* The inquiry here focuses on whether the terms are ambiguous as applied to the allegations before us. *Windridge*, 932 F.3d at 1039-1040.

## **DISCUSSION**

At issue here is whether the Policy required Wesco to defend and to indemnify Esbrook for the Underlying Claims. Wesco argues that coverage was not triggered because the relief sought by the plaintiffs in the Underlying Claims does not constitute "damages," or arise out of the performance of "legal services," as defined by the Policy. Esbrook takes the opposite position. Upon review of the Policy and the parties' submissions, the Court finds that Esbrook has the better argument.

The duty to defend under Illinois law "is serious business." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1045 (7th Cir. 2024) (Scudder, J., concurring in part, and dissenting in part). An insurer has a duty to defend when "the complaint's allegations fall within or potentially within the coverage provisions of the policy." *Id.* at 1042 (quoting *Lyons v. State Farm Fire & Cas. Co.*, 349 Ill. App. 3d 404, 406 (5th Dist. 2005)). "Because a complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, the duty to

6

defend is broader than the duty to indemnify." *Id.* at 1042-1043 (quoting *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir. 1992)).

The duty to defend depends on the facts underlying a complaint, not the specific legal theory on which the plaintiffs based their claims. *Id.* at 1043. To determine whether there is a duty to defend, Illinois courts follow the so-called "eight-corners rule." *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579-580 (7th Cir. 2021). Under that rule, courts look "only within the four corners of the insurance policy and the four corners of the complaint for which defense is sought." *Id.* The threshold for pleading a duty to defend in Illinois is low. *St. Paul*, 99 F.4th at 1043. As such, courts interpreting Illinois law have used broad language to describe the scope of the duty. *See, e.g., Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) ("An insurer can only refuse to defend if the allegations of the underlying complaint preclude any possibility of coverage."). Furthermore, "[t]he underlying complaint[] and the insurance polic[y] must be liberally construed in favor of the insured." *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1057 (7th Cir. 2012).

"[T]he insurer's duty to defend[,] while broad, is not without limits." *Id.* at 1059. Notwithstanding that breadth, the claim against the insured must still contain "explicit factual allegations that potentially fall within policy coverage." *Id.* at 1058-1059 (quoting *Amerisure Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010)). While the Court must examine the Underlying Claims with care, it cannot "read into the complaint facts that are not there." *Id.* at 1059.

The Underlying Claims here generally rely on the same legal theories and facts. For starters, both concern the same legal engagement agreement that was entered into between the Former Clients and Esbrook on November 20, 2019. (*Compare* Dkt. 62-1 at 1409 *with* Dkt. 62-2

at 1444). Both Underlying Claims involve the same claims and factual allegations: (1) breach of contract claims based on Esbrook allegedly violating the legal engagement agreement by failing to disburse settlement proceeds; (2) unjust enrichment claims based on Esbrook allegedly withholding settlement proceeds from the Former Clients; and (3) professional negligence claims based on Esbrook allegedly violating its fiduciary duties to the Former Clients. (*Compare* Dkt. 62-1 at 1413-1416 *with* Dkt. 62-2 at 1460-1468). And the Underlying Claims seek monetary damages for breach of the engagement agreement and professional negligence, restitution for unjust enrichment, and release of funds allegedly owed to the Former Clients. (*Compare* Dkt. 62-1 at 1413-1417 *with* Dkt. 62-2 at 1460-1476).

Esbrook and Wesco dispute whether the Underlying Claims seek "damages" and arise out of the performance of "legal services." The Court must therefore determine if the Underlying Claims include allegations "that are even potentially within coverage," *i.e.*, potentially seek damages and arise out of the performance of legal services as those terms are defined in the Policy. *See Lagestee-Mulder*, 682 F.3d at 1056.

### I. Damages Under the Policy

The relevant language of the Policy guides. "Damages" are defined in Section II of the Policy, which states:

> A. "**Damages**" means judgments, awards and settlements if negotiated with the assistance and approval of the **Company**. **Damages** do not include:
>
> 1. Legal fees, costs and expenses paid to or incurred or charged by the **Insured**, whether or not claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;
>
> 2. Any conversion, misappropriation, improper comingling or negligent supervision by any person of client or trust account funds or property or funds of any other person held or

    controlled by an **Insured** in any capacity or under any authority, including any loss or reduction in value of such funds or property;

    3. civil . . . penalties . . . , pursuant to court rule and injuries that are a consequence of any of the foregoing;

    4. punitive or exemplary amounts and any multiplied portion of multiplied awards.

(Policy at 416-417) (emphasis in original).

  Esbrook argues that the damages sought in the Underlying Claims are not limited to legal fees and the misappropriation of client funds because they include monetary damages; thus, they fit into the plain language of the Policy. (Pl.'s Mot. at 1095-1101). In contrast, Wesco contends that the Underlying Claims fit into three of the enumerated exclusions by seeking: (1) "[l]egal fees, costs and expenses paid to or incurred by [Esbrook]"; (2) "amounts owed as a result of misappropriation . . . of client or trust account funds"; and (3) "non-covered exemplary and punitive damages." (Def.'s Mot. at 1697) (internal quotes omitted). Wesco's interpretation, however, relies on a piecemeal reading of the Underlying Claims and fails to "construe the [P]olicy as a whole." *Zurich Am. Ins. Co. v. Infrastructure Eng'g, Inc.*, 2024 IL 130242, ¶ 39.

  First, Wesco's categorization of the damages requested in the Underlying Claims is incomplete. While Wesco is correct that the New Mexico Lawsuit sought monetary damages for fraud and punitive damages and both Underlying Claims sought legal fees, both also requested awards of monetary damages for breach of contract and professional negligence. (Dkt. 62-1 at 1413-1417; Dkt. 62-2 at 1460-1476). In addition, the New Mexico Lawsuit seeks damages for breach of fiduciary duty. (Dkt. 62-2 at 1463-1475). Wesco's interpretation of "damages" would lead to the narrow exclusionary provisions related to legal fees and punitive damages "swallowing" the professional liability coverage that the Policy purports to grant to Esbrook. *See Citizens Ins.*

*Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 996 (7th Cir. 2023) ("Because the aim of policy interpretation is to give effect to all provisions of the policy and avoid whenever possible construing one provision in a way that tends to nullify another provision, a court when confronted with such an ambiguity must consider whether the reach of the 'swallowing' exclusion can be deemed more narrow than its plain terms taken in isolation would otherwise suggest."). At minimum, the Former Client's request for compensatory damages for claims like professional negligence and breach of fiduciary duty *potentially* fit into the Policy's definition of "damages," which is all that is required to trigger Westco's duty to defend.

Second, Wesco's interpretation fails to construe the Policy as a whole. Section IV of the Policy states, in relevant part, that:

> [T]o any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured**, however, the **Company** shall provide the **Insured** with a defense of any **claim** based on or arising out of any dishonest, fraudulent or malicious act or omission by an **Insured** until the dishonest, fraudulent or malicious act or omission has been determined by adjudication.

(Policy at 420) (emphasis in original). To the extent that the Underlying Claims do arise out of the misappropriation of client funds or other dishonest behavior, the Policy requires Wesco to "provide [Esbrook] with a defense," until the "act or omission has been determined by adjudication." (*Id.*). While the Policy may or may not require Wesco to *indemnify* Esbrook for alleged dishonest acts if the request to indemnify includes any of the Policy's damages exclusions, it clearly requires Wesco to defend Esbrook until a determination of liability is made. "Adjudication" is not defined by the Policy but Ballentine's Law Dictionary states that it is the "solemn, final, and deliberate determination of [the dishonest act or omission] by the judicial power." *Adjudication*, BALLENTINE'S LAW DICTIONARY (3d ed. 1969); *see also, Adjudication*, THE LAW DICTIONARY (LexisNexis 2002) ("[A] judgment or decision."). Wesco has pointed the Court to no Policy

10

language that allows Wesco to make that determination unilaterally or prematurely. Indeed, Wesco improperly attempts to insert language into the Policy that subverts its purpose, which is to provide professional liability insurance for Esbrook. *Zurich*, 2024 IL 130242, ¶ 39 ("We are bound to construe the insurance policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.").

Wesco also argues that the Court should reach the same conclusion as the First District Court of Appeals of Illinois in *Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775 (1st Dist. 2010). In *Bertucci*, the underlying complaint alleged that an insured attorney "retained an excessive amount of attorney fees" from the settlement of a medical malpractice action. *Id.* at 776. The complaint did not allege that the insured improperly handled the lawsuit, but instead stated claims for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, fraud, and violation of 735 ILCS 5/2-1114, limiting contingent legal fees in medical malpractice actions. *Bertucci*, 399 Ill. App. 3d at 777-778. The circuit court granted, and the appellate court affirmed, the insurer's motion for summary judgment on its declaratory judgment complaint, finding that there was no duty to defend because the suit did not seek "damages" within the meaning of the policy. *Id.* at 779. Like the Policy here, damages were defined as "'judgments, awards and settlements'" and did not include "'legal fees, costs and expenses . . . charged by the Insured . . . and injuries that are consequence of any of the foregoing.'" *Id.* at 777.

In response, Esbrook cites *Canulli*, a case involving a similar definition of damages and a dispute over whether the damages sought fit within a similar exception for "legal fees" that the *Bertucci* court found inapplicable. *Ill. State Bar Ass'n Mut. Ins. Co. v. Canulli*, 2020 IL App (1st) 190142, ¶ 30. The *Canulli* court distinguished its facts from *Bertucci* because the injury in the *Canulli* underlying lawsuit was not a consequence of the "fees [charged] but a consequence of [the

11

insured's] alleged failure to handle [the plaintiff's legal] proceedings expeditiously and appropriately—*i.e.*, [the lawyer's] negligence and breach of contract in representing [the plaintiff]." *Id.* In finding that the damages sought by the plaintiff there were not excluded under the policy, *Canulli* concluded that the underlying complaint was more "a legal malpractice claim, not a fee dispute," because the facts of the case displayed that it was "clearly a dispute about representation." *Id.* Thus, the Illinois Appellate Court found that the insurer had a duty to defend. *Id.*

The instant case is more analogous to *Canulli* than *Bertucci*. The Underlying Claims involve a dispute that arose, in part, because Esbrook allegedly did not abide by its Former Client's wishes to settle the lawsuit in a specific manner and convey property rights related to two different categories of intellectual property. (Dkt. 62-1 at 1410; Dkt. 62-2 at 1452-1453). For example, the New Mexico Lawsuit alleges that Esbrook failed to uphold its duties of loyalty and care "[g]iven the attorney-client relationship," by failing to properly abide by its Former Clients' desires and give proper legal advice during settlement negotiations. (Dkt. 62-2 at 1464-1465). The Colorado Lawsuit relied on similar allegations. (*See* Dkt. 62-1 at 1409-1410, 1414-1416) (alleging professional negligence because Esbrook purportedly breached its duty of care by failing to properly represent the former clients and convey "desires during settlement negotiations"). While the Underlying Claims do involve fee disputes, like *Canulli*, they also rely upon factual allegations that are not independent of the lawyer-client relationship—*i.e.*, Esbrook's alleged failure to give proper legal advice and abide by the Former Client's wishes during settlement negotiations.[5]

---

[5] Similarly, Wesco's reliance on *Local 705 Int'l Brotherhood of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C.*, 316 Ill. App. 3d 391 (1st Dist. 2000), is misplaced. *Five Star Managers* concerned monies illegally taken from a pension fund in violation of fiduciary duties imposed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA). The court held that "[a]n insured . . . does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired." *Five*

Consistent with *Canulli*, the Underlying Claims are more akin to legal malpractice claims about representation than just fee disputes.

Accordingly, the Court finds that the Underlying Claims include allegations that show the Former Clients sought to recover awards that are potentially "damages" as defined by the Policy.

## II. Legal Services Under the Policy

Turning to the term "legal services." Esbrook argues that the allegations in the Underlying Claims relate to its "performance of legal services over the course of representing the Former Clients," and are not limited to the fee dispute between the two. (Pl.'s Resp. at 1768, Dkt. 70). Wesco counters that Esbrook's failure to disburse client funds is an improper business practice of Esbrook and therefore does not constitute the rendering of "legal services" as defined by the Policy. (Def.'s Mot. at 1699-1701). But Wesco's position ignores the allegations in the Underlying Claims.

Again, the Policy language guides. "Legal services" are defined in Section II of the Policy, which states, in relevant part:

> H. "**Legal services**" mean:
>
> 1. those services performed by an **Insured** for others as a lawyer . . . but only if such services are performed for a fee that inures to the benefit of **Named Insured** . . . .

(Policy at 417) (emphasis in original). The Underlying Claims are, in part, based on Esbrook's failure to properly negotiate the Stryker Litigation settlement according to the wishes of its Former Clients. (*See* Dkt. 62-1; Dkt. 62-2). Moreover, the New Mexico Lawsuit's counterclaim alleges that Esbrook's failure amounts to a breach of its fiduciary duty owed to its former clients "as a

---

*Star Managers*, 316 Ill. App. 3d at 395. The Underlying Claims here do not only seek recuperation of alleged improperly acquired settlement funds; instead, they seek compensation for damages incurred due to Esbrook's alleged professional negligence.

result of the attorney-client relationship." (Dkt. 62-2 at 1470-1472). These allegations easily implicate the services performed by Esbrook for the Former Clients "as a lawyer." (Policy at 417). These allegations clearly meet the low bar of "potentially" arising out of the performance of "legal services," which is all that is required to trigger a duty to defend. *See Lagestee-Mulder*, 682 F.3d at 1056.[6]

In sum, the Court finds that the Underlying Claims are covered under the Policy and Wesco has, or did have, a duty to defend Esbrook in those disputes. To be clear, this ruling does not extend to Wesco's duty to indemnify Esbrook, as the Seventh Circuit has "warned repeatedly against trying to resolve indemnity before liability" is determined in the underlying lawsuit. *Doe v. City of Chicago*, 360 F.3d 667, 672 (7th Cir. 2004) (collecting cases). The indemnification question will depend on specific facts and legal arguments that the parties' cross-motions for summary judgment did not address. The Court reserves ruling on Wesco's duty to indemnify until that issue is ripe and properly presented.

## **CONCLUSION**

For all the foregoing reasons, the Court grants partial summary judgment in favor of Esbrook on counts I and II of the complaint and counts I and II of Wesco's counterclaim with respect to Wesco's duty to defend Esbrook in the Underlying Claims and denies Wesco's motion for summary judgment.

---

[6] Wesco also argues that the Court should follow the *Bertucci* court in finding that no duty to defend existed because the underlying complaint did not allege "an act or omission in the performance of legal services by the Insured." The *Bertucci* court decided on the grounds that the plaintiff's "retention of money cannot be construed as the provision of any type of [legal] service for another person and is a business practice independent of the lawyer-client relationship." *Bertucci*, 399 Ill. App. 3d at 784. However, that reasoning is distinguishable for the same reasons articulated here: the Underlying Claims involve allegations of professional negligence that go hand-in hand with the lawyer-client relationship. *See supra* at 8-13.

14

**DATED**: March 17, 2025            **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge

15