**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ESBROOK P.C., | ) | |
| | ) | Case No. 23-cv-3675 |
| Plaintiff, | ) | |
| v. | ) | District Judge LaShonda A. Hunt |
| | ) | |
| WESCO INSURANCE | ) | Magistrate Judge Jeannice W. Appenteng |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff's motion to compel, Dkt. 135, and defendant's motion to compel, Dkts. 161, 167. For the reasons set forth below, both motions are granted in part and denied in part.

**I.     Background**

Plaintiff in the instant case, Esbrook P.C., is a law firm seeking declaratory judgment about the terms of a professional liability policy issued by defendant Wesco Insurance Company.

In November 2019, Esbrook agreed to represent Wayne Auge and Covalent Global Trust (hereinafter "former clients") in a lawsuit concerning intellectual property rights ("IP litigation"). Dkt. 61 at 3. In May 2022, Esbrook negotiated a settlement on behalf of the former clients, resolving the IP litigation. Dkt. 61-4. However, a dispute arose between the former clients and Esbrook, resulting in more litigation. On September 29, 2022, the former clients sued Esbrook in Colorado state court alleging breach of contract, unjust enrichment, and professional

negligence. Dkt. 1-1 at 13. As a result, Esbrook sought coverage from Wesco under the "Lawyers Professional Liability Policy." Dkt. 83 at 3-4. In October 2022, Wesco began handling the insurance claim and retained legal counsel "to help evaluate the matter" on or about October 19, 2022. Dkt. 136 at 3. On November 4, 2022, Wesco issued a letter to Esbrook stating it had no obligation under the policy to defend or indemnify Esbrook in the Colorado litigation. Dkt. 1 at 3. Esbrook defended itself in the Colorado lawsuit until the case was eventually dismissed for lack of personal jurisdiction. Dkt. 83 at 3.

Meanwhile, Esbrook sued the same former clients in New Mexico, alleging breach of contract. Dkt. 1 at 3. On May 9, 2023, the former clients filed counterclaims for professional negligence, breach of fiduciary duty, and fraud. *Id.* On May 10, 2023, Esbrook tendered the counterclaims to Wesco and sought coverage. That same day, Wesco began reviewing the counterclaims and sent the claims to its retained counsel for review. Dkt. 136 at 4. On May 22, 2023, and May 26, 2023, Esbrook emailed Wesco, stating it would have to engage its own counsel because Wesco had not yet issued a coverage determination. Esbrook further stated that a denial of coverage "would be plainly unreasonable and constitute bad faith," and that it "fully intend[ed] to seek reimbursement for any fees expended in our defense of the counterclaim … along with all other available recovery." Dkts. 136-8, 136-9. On June 1, 2023, Wesco denied coverage, again insisting that under the policy it did not have a duty to defend or indemnify Esbrook. Dkt. 136-10.

On June 9, 2023, Esbrook filed this suit against Wesco. Dkt. 1. After limited initial discovery, the parties filed cross-motions for summary judgment. The District Judge granted Esbrook's motion in part, finding Wesco had a duty to defend plaintiff in the Colorado and New Mexico litigations. Dkt. 83. The District Judge denied Wesco's motion. The parties then resumed discovery on the remaining issues: damages for breaching the duty to defend, whether Wesco has a duty to indemnify plaintiff for the Colorado and New Mexico litigations, and whether Wesco's denial of coverage was vexatious and unreasonable under 215 ILCS 5/155.

Plaintiff Esbrook filed a motion to compel defendant Wesco's notes and communications about the insurance claims for the Colorado and New Mexico litigations. Dkt. 135. Defendant contends it has properly withheld or redacted the documents for privilege. Dkt. 136. Upon the Court's request, defendant submitted the withheld documents for in camera review. Additionally, defendant filed a motion to compel documents about the IP litigation, Colorado litigation, and New Mexico litigation. Dkts. 161, 167. The motions are addressed in turn below.

## II. Legal Standard

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). A party may compel discovery under Rule 37 whenever another party

fails to respond to a discovery request, or when its response is insufficient. Fed. R. Civ. P. 37(a).

At the same time, "[t]he attorney-client privilege prohibits the compelled disclosure of 'confidential communications between a client and an attorney for the purposes of obtaining legal advice.'" *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 216 (N.D. Ill. 2013) (quoting *Denius v. Dunlop*, 209 F.3d 944, 952 (7th Cir. 2000)). To determine whether a communication is covered by attorney-client privilege, the Court asks "(1) whether 'legal advice of any kind [was] sought … from a professional legal advisor in his capacity as such'; and (2) whether the communication 'was relat[ed] to that purpose' and 'made in confidence … by the client.'" *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (quoting *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). The party invoking the privilege bears the burden of demonstrating each element. *RBS Citizens, N.A.*, 291 F.R.D. at 216-17.

In Illinois, generally "communications between an insurer and its outside coverage counsel are privileged," but "to the extent that an attorney acts as a claim adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney/client privilege does not apply." *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 794 (N.D. Ill. 2015) (quoting *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, No. 09 C 7793, 2010 WL 4781461, at *1 (N.D. Ill. Nov. 17, 2010)). This rule exists to prevent insurance companies from delegating regular business activities to attorneys in order to insulate documents from discovery. *Id.*

The work product doctrine prevents disclosure of documents "prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E.*, 600 F.3d at 618. The work product doctrine is "distinct and broader than the attorney-client privilege." *Slaven*, 83 F. Supp. 3d at 795 (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)). The doctrine applies only when "some articulable claim, likely to lead to litigation, [has] arisen." *Sandra T.E.*, 600 F.3d at 622 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)). Accordingly, as a general rule, an insurance company's coverage investigation is not protected work product. *Slaven*, 83 F. Supp. 3d at 795-96.

A party that withholds discoverable information by claiming the information is privileged must sufficiently describe the communications or documents "and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Courts in this District therefore require that privilege logs identify "for *each* separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006) (emphasis in original); *see also Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006) (explaining that a party "asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld"). "The

5

claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'" *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (quoting *United States v. Lawless*, 709 F.2d 485 (7th Cir. 1983)); *Muro*, 2006 WL 3422181, at *2.

## III.    Plaintiff's Motion to Compel

Plaintiff seeks to compel claim notes and communications about the coverage determinations for the Colorado litigation in 2022 and the New Mexico litigation in 2023. Defendant maintains the withheld notes and emails are privileged.

### A.    Claim Notes

#### 1.    *AMTRUST 1091*

This document contains seven redacted entries, and the Court finds the only privileged entry is dated 11/16/23 and appears second from the bottom of the page. The privileged entry is written by a non-lawyer but reflects communications with defendant's coverage counsel about the instant litigation and anticipated next steps. Thus, this entry was created for the purpose of the present litigation and is protected from disclosure. *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385, at *7 (N.D. Ill. Oct. 12, 2021), *objections overruled*, No. 1:15-CV-10324, 2022 WL 1642311 (N.D. Ill. Mar. 30, 2022). The remaining entries, however, are not protected because they do not seek or disclose legal advice. *See Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 894 (N.D. Ill. 2018). Instead, the entries reflect defendant's attempts to transfer documents to coverage counsel. The notes do not reveal the content of

6

the shared documents but rather constitute "routine communications between the attorneys and claims handlers" that are not privileged. *Id*. at 894, 899 (finding a communication between lawyer and client that attaches documents and offers to answer any further questions is not privileged). Accordingly, defendant shall produce an unredacted version of document AMTRUST 1091, but it may keep the 11/16/23 entry redacted.

### 2. *AMTRUST 1092*

The Court finds that the first two entries in this document must be produced but the remaining entries are covered by the attorney-client privilege and/or work product doctrine. The first entry is a continuation from AMTRUST 1091 and must be produced for the reasons set forth above. The second entry, dated 11/16/23, reflects defendant's reserve information. It was written by Lisa Garbaty, whom defendant does not identify as a lawyer. Moreover, the note does not refer to communication with a lawyer or reflect legal advice or impressions. Accordingly, the Court finds it is not protected attorney-client communication or work product.

Defendant's arguments against production of the 11/16/23 note are unavailing. First, defendant cites *Certain Underwriters at Lloyds, London v. Fid. & Cas. Ins. Co. of New York*, No. 89 C 876, 1998 WL 142409 (N.D. Ill. Mar. 24, 1998) to argue that the reserve note is work product because it was created after litigation began. However, the Court in *Certain Underwriters* engaged in a more thorough analysis, asking whether the reserve information "reveal[ed] attorney mental impressions, thoughts, and conclusions" and whether updating reserve information

was primarily motivated by litigation. *Id.* at *2. Defendant's argument that the note is privileged "because it followed filing of this litigation" does not carry the burden of establishing protection. Second, defendant argues that the reserve information is not relevant. But this cursory objection is insufficient and does not square with the work product argument, given work product is relevant discovery. *See* Fed. R. Civ. P. 26(b)(3)(A) (defining work product as privileged, relevant material); *Hobbs v. USAA Gen. Indem. Co.*, No. 3:20-CV-00262-MAB, 2022 WL 2528239, at *3 (S.D. Ill. July 7, 2022) (explaining argument that a document is irrelevant and work product is "inherently inconsistent"). Third, defendant's contention that reserve information is proprietary or confidential information does not itself establish a basis to withhold the information. *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, No. 09 C 7793, 2010 WL 4781461, at *2 (N.D. Ill. Nov. 17, 2010). Therefore, defendant shall produce this entry.

The remaining entries (dated 11/14/23, 10/12/23, 9/28/23, and 9/15/23), shall remain redacted. The notes are protected by the work product doctrine because they were created after plaintiff filed this federal lawsuit and in camera inspection confirms they were prepared for this litigation. *AU Elecs., Inc. v. Harleysville Grp., Inc.*, No. 13 C 5947, 2014 WL 2429104, at *4 (N.D. Ill. May 28, 2014); *St. Paul Guardian Ins. Co.*, 2021 WL 4745385, at *7. Some of the notes describe communications with coverage counsel regarding litigation strategy, and therefore they are also protected by the attorney-client privilege. Plaintiff disputes this designation because the claim notes themselves are not "communications written by

8

or to an attorney." Dkt. 135 at 12. But the attorney-client privilege applies because "the notes summarize the communications to and from counsel and producing them would disclose the substance of the communication." *AU Elecs., Inc.*, 2014 WL 2429104, at *4.

For all these reasons, defendant need only produce the first two entries in AMTRUST 1092.

### 3. *AMTRUST 1093*

Defendant redacted three entries dated 9/15/23, 8/24/23, and 8/15/23. The 9/15/23 entry is privileged attorney-client communication and work product because it summarizes communications with coverage counsel and reflects counsel's legal opinions. *Id.* The 8/24/23 and 8/15/23 entries, by contrast, appear to be "innocuous status updates" that do not enjoy privilege. *Towne Place Condo Ass'n*, 284 F. Supp. 3d at 894. Defendant's privilege log describes the entries as "communication and action taken following filing of current action," and reflecting "legal advice … and review of attorney work product." These descriptions do not establish privilege. *St. Paul Guardian Ins. Co.*, 2021 WL 4745385, at *4 (finding phrases like "confidential communication" and "legal advice and strategy" are "entirely conclusory" and insufficient). Defendant's brief summarily adds that the entries "fall[ ] squarely within the attorney-client privilege and/or work product protections." Dkt. 136 at 8. But "saying so doesn't make it so." *St. Paul Guardian Ins. Co.*, 2021 WL 4745385, at

*4. Accordingly, defendant shall reproduce AMTRUST 1093 with the 8/24/23 and 8/15/23 entries unredacted.

### 4.    AMTRUST 1094-1095

Defendant redacted seven entries in these documents. Entries dated 5/24/23, 5/19/23, and 5/11/23 concern the handling of plaintiff's claim for the New Mexico litigation while entries dated 12/5/22 and 11/4/22 concern the handling of plaintiff's claim for the Colorado litigation. The 5/10/23 and 10/24/22 entries reflect reserve information.

### i.   Entries 5/24/23, 5/19/23, 5/11/23, 12/5/22, and 11/4/22

Defendant argues these entries are protected as attorney-client communication and attorney work product because they reflect coverage counsel's legal opinions and were created in anticipation of litigation. Plaintiff contends the notes are not protected because they were created before plaintiff filed this lawsuit, the notes reflect defendant's ordinary business of coverage analysis, and defendant's counsel was not acting in a legal capacity but as a claim analyst. Dkt. 135 at 9-13. The Court finds that defendant has not established attorney-client privilege, nor work product protection.

Defendant argues coverage counsel acted as a legal advisor and insists it did not delegate the insurance investigation of plaintiff's claims to counsel. In its brief, defendant writes that its claim administrator, AmTrust, "received notice of [each] claim, reviewed it internally, had three levels of employee review before issuing its first denial, [and] issued all coverage denial letters." Dkt. 136 at 7; *see also id.* at 13

10

("Wesco did not pass off its claims handling to outside counsel."). But "statements in briefs are not evidence," and defendant offers little evidence to corroborate its assertion that AmTrust substantively and independently reviewed plaintiff's claim. *See Slaven*, 83 F. Supp. 3d at 794-97.

For example, regarding the Colorado litigation claim, defendant points to emails between AmTrust employees seeking approval to issue the claim denial, arguing the communications "plainly reflect internal decision-making." Dkt. 136 at 3-4. Regarding the New Mexico litigation claim, defendant highlights an email between an AmTrust employee and plaintiff which shares AmTrust's "initial impression" of the claim. *Id.* However, an in camera inspection of both email exchanges reveals that the AmTrust employees simply forwarded counsel's analysis internally and regurgitated counsel's analysis to plaintiff. There is no indication in the emails cited that AmTrust engaged in independent review of plaintiff's claim or made any coverage decisions separate from counsel.

Defendant also highlights claim note entries that state AmTrust forwarded the claim to counsel and was "simultaneously reviewing it as well." *Id.* But nothing else appears in the documents (such as progress notes or claim analysis) to corroborate the statement that AmTrust did in fact review the claim—instead, the entries exclusively denote counsel's drafts and conclusions. As a result, the documents cited by defendant suggest that AmTrust delegated its coverage review to counsel. Notably, defendant does not offer declarations or other evidence about counsel and AmTrust's roles in processing plaintiff's claim to support its argument.

11

*Compare One Place Condo. LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2013 WL 788092, at *4 (N.D. Ill. Mar. 1, 2013) (finding affidavits from counsel and claims administrator supported privilege because they certified their roles and explained their respective authority to make coverage determinations).

For all these reasons, the Court finds defendant has not met its burden to establish attorney-client privilege. *See Slaven*, 83 F. Supp. 3d at 797, 801 (deciding privilege only after in camera review and noting "a significant question is raised as to the adequacy of the [insurer's] proof that it did not delegate" ordinary business decisions to coverage counsel when evidence submitted said "nothing about what the claims department did in connection with the [insurance] claim"); *cf. Am. Safety Cas. Ins. Co. v. City of Waukegan*, No. 07 C 1990, 2010 WL 11587903, at *4 (N.D. Ill. Sept. 9, 2010) (concluding privilege applied after finding evidence that insurer "had its own claims adjusters working on the claim, and one of them requested legal advice regarding coverage").

Second, the Court finds defendant has not established work product protection because the 5/24/23, 5/19/23, and 5/10/23 notes were created before defendant denied coverage for the New Mexico litigation, the 11/4/22 and 12/5/22 notes were created before defendant denied coverage for the Colorado litigation, and defendant has not provided evidence that litigation with plaintiff was fairly anticipated at either point in time. *See Am. Safety Cas. Ins. Co.,* 2010 WL 11587903, at *4. Defendant argues litigation was contemplated before these entries because (1) each coverage denial letter "stated that declaratory coverage litigation may need

12

to be filed," and (2) plaintiff threatened litigation on May 22, 2023. Dkt. 136 at 4, 7-9. Neither argument is persuasive.

The "inevitability" that "some fraction of disappointed insureds will sue … [or that] the carrier may initiate litigation" after denying a claim "does not mean that the pre-denial activities of a carrier are, in every case, 'in anticipation of litigation.'" *Slaven*, 83 F. Supp. 3d at 795-96. That defendant addresses this reality in its denial letter does little to suggest it actually, reasonably anticipated litigation here, and "the mere contingency that litigation may result" is not enough to establish work product protection. *Id.* at 795. Moreover, if the Court were to accept defendant's premise—that its denial letter evidences anticipated litigation—insurers may be incentivized to reference the possibility of a declaratory action in denial letters to shield their coverage investigations from discovery. *See id.* at 794-95 (discussing public policy reasons for limiting privilege for insurance investigations).

As to plaintiff's "May 22, 2023 emailed threat of litigation," Dkt. 136 at 8, defendant fails to explain how the email would (or could) motivate the creation of the pre-existing entries dated 5/19/23, 5/11/23, 12/5/22, and 11/4/22. And contrary to defendant's assertion in its brief, the 5/19/23 and 5/24/23 entries do not "specifically address[ ]" the May 22nd email. *See id.* In sum, defendant has not demonstrated the redacted entries were "prepared because of anticipated litigation rather than to

13

assist [AmTrust] in making its coverage determination." *Am. Safety Cas. Ins. Co.,* 2010 WL 11587903, at *5. Therefore, they must be produced.

### ii.      Entries 5/10/23 and 10/24/22

Defendant argues these entries are properly withheld because they contain loss reserve information that is "confidential and privileged." For the reasons set forth in Section III.A.2, the information must be produced.

For the foregoing reasons, defendant shall produce unredacted versions of AMTRUST 1094 and AMTRUST 1095.

### B.      Coverage Communications

Defendant redacted AMTRUST 1142, 1241-44, 1343-45 and 1793-95, invoking attorney-client privilege. The documents reflect email communications between AmTrust and coverage counsel. Defendant argues that it communicated with counsel for legal advice and that counsel was not determining coverage. With the exception of AMTRUST 1793, the Court disagrees. Upon inspection, the emails demonstrate that an AmTrust employee received plaintiff's insurance claims, forwarded the file to counsel for his opinion on coverage, and later asked him to draft the coverage determination. It appears, and defendant again offers no other evidence to the contrary, that AmTrust "immediately pass[ed] [the claim] on to lawyers for their handling of every aspect of the investigation and analysis and disposition of the claim." *Slaven*, 83 F. Supp. 3d at 800. To the extent counsel acted as a claims adjuster, privilege does not apply. *Id.* at 794.

14

In drawing the distinction between legal advisor and claims adjuster, two communications warrant further discussion. In one email, AmTrust mentions potential nuances of state law (AMTRUST 1241), which could suggest counsel was retained as a legal advisor. However, the Court's in camera review of the emails exchanged, and the review of the claim notes described above, belies this possibility. Though AmTrust opines that state law may come into play, based on the Court's review of the in camera documents, it does not appear that the law was part of counsel's analysis or recommendation. Instead, counsel responded with a draft disclaimer of coverage that was ultimately adopted by AmTrust as the coverage decision.[1] Elsewhere, the emails show that counsel analyzed the terms of the policy itself to make a recommendation, which is the work of a claims adjuster not a legal advisor. *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565, at *7 (C.D. Ill. Jan. 31, 2005). The second email exchange (AMTRUST 1793), in contrast, explicitly discusses legal advice regarding whether defendant should initiate a lawsuit. This is a privileged communication. Therefore, defendant may redact the sentences beginning with "I would" and "Do we" in AMTRUST 1793. But for the foregoing reasons, and the reasons explained in Section III.A.4.i, defendant shall provide the other withheld communications with counsel because he was not acting as a legal advisor.

---

[1] The email mentions an opinion letter that was not provided to the Court. Without it, the Court cannot be sure legal analysis was not provided. However, as it is defendant's burden to establish privilege, this uncertainty does not alter the Court's conclusion.

15

## C. No Waiver

Finally, to the extent the Court determined certain withheld information is privileged, the Court finds that the privilege is not waived nor overridden by plaintiff's purported need for the discovery.[2] *See* Dkt. 135 at 7-8, 14. Plaintiff argues that defendant put its coverage determination at issue and so "*any* documents and communications" concerning coverage cannot be withheld. *Id.* at 14 (emphasis added). But plaintiff cites no case that applies waiver so broadly, and courts in this District have repeatedly noted that "the at-issue waiver doctrine is limited and 'should not be used to eviscerate the attorney-client privilege.'" *Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, 740 F. Supp. 3d 685, 694 (N.D. Ill. 2024) (quoting *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2010 WL 2697599 (N.D. Ill. July 7, 2010)). Moreover, after in camera review, the Court disagrees that the withheld discovery is "essential" to plaintiff's claims. For all the reasons set forth above, defendant may continue to withhold certain claim notes and communications that fall under the attorney-client privilege or work product doctrine.

## IV. Defendant's Motion to Compel

Defendant argues plaintiff's responses to RFP Nos. 9, 23-26 are deficient. In the requests at issue, defendant seeks documents from the three lawsuits that precede this case: the IP litigation, the Colorado litigation, and the New Mexico

---

[2] Plaintiff also argues defendant should be barred from disputing certain allegations as a sanction for withholding discoverable information. Dkt. 135 at 2; Dkt. 139 at 8. But this Court does not have the authority to issue the relief requested. Furthermore, the Court finds other sanctions available under Rule 37 are not appropriate because after defendant complies with this order, plaintiff will have access to the discovery.

16

litigation. At times, defendant refers to all three as "underlying actions." But the IP litigation is distinct from the latter two lawsuits because plaintiff was not a party to the IP lawsuit and did not seek coverage or involvement from defendant. Conversely, in the Colorado and New Mexico litigations, plaintiff itself was defending against claims and requested coverage under defendant's insurance policy at issue in the present case. Accordingly, the Court will refer to the Colorado and New Mexico litigations as the "underlying actions," and the intellectual property lawsuit as the "IP litigation."

### A.     RFP No. 9

Defendant requests "[a]ny and all Documents and Communications that reflect Esbrook's decision to hold, for any amount of time, the entire proceeds from the settlement of the [IP litigation] in Esbrook's trust account." Dkt. 161 at 8. Plaintiff has withheld email communications with its former clients, experts, and co-counsel exchanged during the IP litigation, arguing the documents are privileged. Dkt. 172 at 5. Defendant argues, among other things, that any privilege was waived by the former clients when they sued plaintiff for malpractice in the underlying actions. Dkt. 167 at 9-10. Plaintiff does not dispute that the former clients waived privilege over the IP litigation communications in the underlying actions but insists "such a waiver extends only to the Underlying Action—not this one." Dkt. 172 at 8. In other words, the parties disagree on whether waiver of privilege in one lawsuit results in waiver of that privilege in subsequent lawsuits.

17

Plaintiff cites *Lama v. Preskill*, 353 Ill. App. 3d 300 (2004) to support limiting waiver to the underlying actions. In *Lama,* the Court explained that "privilege may be impliedly waived when the client asserts claims or defenses that put his or her communications with the legal advisor at issue in the litigation." *Id.* at 305, 307 (finding plaintiff waived attorney-client privilege by invoking the discovery rule in her case). Plaintiff argues the phrase "in the litigation" makes implied waiver "case specific," such that putting privileged communications at issue in the malpractice litigation does not waive privilege over those communications in this insurance litigation. Dkt. 172 at 8. The Court finds this reads too much into the *Lama* holding, which did not consider multiple lawsuits or subsequent invocations of privilege after waiver occurred in one case. Plaintiff insists it "has been unable to find a case where at-issue waiver extended from one litigation … to another litigation" and faults defendant for failing to cite one too. *Id.* However, as the party invoking privilege, plaintiff bears the burden of establishing privilege applies. *RBS Citizens, N.A.,* 291 F.R.D. at 216-17. The Court finds plaintiff has not demonstrated privilege remains intact for the present litigation after privilege was waived in the underlying actions.

Additionally, other cases applying Illinois and federal common law support the conclusion that plaintiff's withheld communications are no longer privileged after the former clients waived privilege in the underlying actions.[3] For example, in

---

[3] Although Illinois law is controlling on issues of privilege in this case, *see Dexia Credit Loc. v. Rogan*, 231 F.R.D. 268, 272 (N.D. Ill. 2004), the Court finds federal common law persuasive given the similarities between Illinois law and federal common law,

18

*In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 254 (2002), the Illinois Appellate Court found that the petitioner waived privilege over attorney-client communications in petitioner's present case when the petitioner previously waived that privilege in a malpractice case against her attorney. Similarly, another court in this District held that a plaintiff bringing a civil rights case waived privilege over attorney-client communications he previously put at issue in a post-conviction relief petition. *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 718-19 (N.D. Ill. 2015). Rejecting the plaintiff's argument that "waiver is limited to the [initial post-conviction] proceeding," the court explained that "[d]isclosure of confidential communications is inconsistent with the attorney-client relationship and almost invariably waives the privilege 'with respect to the world at large.'" *Id.* at 709, 711 (quoting *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)). Accordingly, the Court determined that "information once disclosed to a party opponent waives the attorney-client privilege as to future proceedings." *Id.* (collecting cases and applying federal common law); *see also* David P. Leonard et al., *New Wigmore: A Treatise on Evidence* § 6.12 (3d ed. 2025) (explaining "the clear majority rule is that a waiver is permanent in a temporal sense. Once the privilege has been waived even in a distinct legal proceeding, the privilege is lost 'forever' 'once and for all.' As the vernacular expression goes, the cat is out of the bag."). For all these reasons, the

---

*Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326 (N.D. Ill. 2008), and the absence of cases that squarely address the issue presented.

19

Court finds privilege is waived as to plaintiff's withheld communications, and plaintiff must produce the communications responsive to RFP No. 9.

## B.     RFP No. 24

Defendant seeks "[u]nredacted copies of all pleadings, motions and any other court filings from the Underlying Actions." Dkt. 161-6 at 4. In the requests for production, defendant defines "Underlying Actions" as the "Colorado Action and the New Mexico Action collectively." *Id.* at 3. Plaintiff represents that responsive documents "include sealed filings with privileged communications and confidential details of the settlement" in the IP litigation. Dkt. 172 at 5. Plaintiff argues it cannot produce privileged and confidential information without the consent of the former clients. *Id.* at 5-9 (invoking attorney-client and work-product privilege and confidentiality rules under Illinois Rules of Professional Conduct). Defendant argues privilege does not apply to documents in the underlying litigation because of the common interest doctrine. Dkt. 161. The Court agrees.

Under the common interest doctrine, the communications between an insured and its attorney are not privileged in subsequent litigation between the insured and the insurer because the "insured and his insurer initially have a common interest in defending an action against the former." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 328 (1991). Similarly, documents prepared for the underlying litigation, when the insurer and the insured had a common interest in defense, are not protected by the work product doctrine when the insurer and

20

insured become adverse. *Abbott Lab'ys v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 410 (N.D. Ill. 2001).

Plaintiff (insured) and defendant (insurer) shared a common interest in defending plaintiff against the malpractice claims in the underlying actions. The common interest applies even when, as here, the insurer provided no defense in the underlying action. *See Waste Mgmt., Inc.*, 579 N.E.2d at 328-29. Accordingly, the New Mexico and Colorado court filings that were redacted or sealed for privilege must be produced in full to defendant. To the extent plaintiff invokes the Illinois Rules of Professional Conduct to avoid disclosure of confidential information, Rule 1.6 allows disclosure "to comply with other law or a court order." Thus, producing documents responsive to RFP No. 24 in accordance with the common interest doctrine and in compliance with this Order will not run afoul of state rules. Defendant's motion as to RFP No. 24 is granted.

### C.     RFP Nos. 23, 25, 26

Defendant requests all documents and communications exchanged between plaintiff and the former clients in the underlying actions; all documents and communications exchanged between plaintiff and its lawyers during the underlying actions; and all documents and communications generated, created, received or sent by any attorney or representative of plaintiff in handling the underlying actions. Dkt. 161-6 at 4-5. The Court finds these requests are overly broad and likely duplicative of one another. Additionally, the parties do not agree on what has been produced already and what has been withheld. *See* Dkt. 161 at 11, 15 (asserting

21

plaintiff has produced nothing nor included documents in a privilege log); Dkt. 172 at 13 (asserting plaintiff has produced internal and external communications about the decision to settle the underlying actions). Defendant has not clearly identified the specific documents it seeks to compel, and therefore the Court cannot determine what privilege applies, if any. The parties shall meet and confer about RFP Nos. 23, 25, and 26, keeping in mind the foregoing rulings on privilege. To the extent plaintiff maintains responsive documents are privileged, plaintiff must supplement its privilege log. Defendant's motion as to RFP Nos. 23, 25, and 26 is therefore denied without prejudice.

## CONCLUSION

For the reasons above, plaintiff's motion to compel, Dkt. 135, is granted in part and denied in part. The Court finds that while some of defendant's withheld information is protected by the attorney-client privilege and work product doctrine, some of the redactions were not warranted. Accordingly, by March 18, 2026, defendant shall supplement its production as follows: Defendant shall reproduce AMTRUST 1091 with only the 11/16/23 entry redacted. Defendant shall produce the first two entries of AMTRUST 1092 and shall produce the 8/24/23 and 8/15/23 entries of AMTRUST 1093. Defendant shall reproduce AMTRUST 1094 and 1095 with no redactions. Defendant shall reproduce AMTRUST 1142, 1241-44, 1343-45

22

and 1794-95 with no redactions. Defendant shall reproduce AMTRUST 1793, redacting only the two sentences identified in Section III.B of the Court's analysis.

For the reasons above, defendant's motion to compel, Dkts. 161, 167, is granted in part and denied in part. By March 27, 2026, plaintiff shall respond to RFP Nos. 9 and 24. By April 3, 2026, the parties shall meet and confer about RFP Nos. 23, 25, and 26. Also by April 3, 2026, the parties shall file a joint status report setting forth what additional discovery has been completed, what discovery remains, and whether any disputes require the Court's attention.

**So Ordered.**

**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 3/3/2026